RICHARD OLOFFSON, d/b/a RICH'S AG SERVICE, Plaintiff-Appellant, *v.* CLARENCE COOMER, Defendant-Appellee.

(No. 72-212;

Third District—May 21, 1973.

*Rehearing denied June 21, 1973.*

R. K. Rainey, of Princeton, for appellant.

Roger V. Pierson, of Princeton, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Richard Oloffson, d/b/a Rich's Ag Service appeals from a judgment of the circuit court of Bureau County in favor of appellant against Clarence Coomer in the amount of $1,500 plus costs. The case was tried by the court without a jury.

■■ Oloffson was a grain dealer. Coomer was a farmer. Oloffson was in the business of merchandising grain. Consequently, he was a "merchant" within the meaning of section 2—104 of the Uniform Commercial Code. (Ill. Rev. Stat. 1969, ch. 26, § 2—104). Coomer, however, was simply in the business of growing rather than merchandising grain. He, therefore, was not a "merchant" with respect to the merchandising of grain.

On April 16, 1970, Coomer agreed to sell to Oloffson, for delivery in October and December of 1970, 40,000 bushels of corn. Oloffson testified at the trial that the entire agreement was embodied in two separate contracts, each covering 20,000 bushels and that the first 20,000 bushels were to be delivered on or before October 30 at a price of $1.12¾ per bushel and the second 20,000 bushels were to be delivered on or before December 15, at a price of $1.12¼ per bushel. Coomer, in his testimony, agreed that the 40,000 bushels were to be delivered but stated that he was to deliver all he could by October 30 and the balance by December 15.

On June 3, 1970, Coomer informed Oloffson that he was not going to plant corn because the season had been too wet. He told Oloffson to arrange elsewhere to obtain the corn if Oloffson had obligated himself to deliver to any third party. The price for a bushel of corn on June 3, 1970, for future delivery, was $1.16. In September of 1970, Oloffson asked Coomer about delivery of the corn and Coomer repeated that he would not be able to deliver. Oloffson, however, persisted. He mailed Coomer confirmations of the April 16 agreement. Coomer ignored these. Oloffson's attorney then requested that Coomer perform. Coomer ignored this request likewise. The scheduled delivery dates referred to passed with no corn delivered. Oloffson then covered his obligation to his own vendee by purchasing 20,000 bushels at $1.35 per bushel and 20,000 bushels at $1.49 per bushel. The judgment from which Oloffson appeals awarded Oloffson as damages, the difference between the contract and the market prices on June 3, 1970, the day upon which Coomer first advised Oloffson he would not deliver.

Oloffson argues on this appeal that the proper measure of his damages was the difference between the contract price and the market price on the dates the corn should have been delivered in accordance with the April 16 agreement. Plaintiff does not seek any other damages. The trial court prior to entry of judgment, in an opinion finding the facts and reviewing the law, found that plaintiff was entitled to recover judgment

only for the sum of $1,500 plus costs as we have indicated which is equal to the amount of the difference between the minimum contract price and the price on June 3, 1970, of $1.16 per bushel (taking the greatest differential from $1.12¼ per bushel multiplied by 40,000 bushels). We believe the findings and the judgment of the trial court were proper and should be affirmed.

■■ It is clear that on June 3, 1970, Coomer repudiated the contract "with respect to a performance not yet due." Under the terms of the Uniform Commercial Code the loss would impair the value of the contract to the remaining party in the amount as indicated. (Ill. Rev. Stat. 1969, ch. 26, § 2—610.) As a consequence, on June 3, 1970, Oloffson, as the "aggrieved party", could then:

"(a) for the commercially reasonable time await performance by the repudiating party; or

(b) resort to any remedy for breach (Section 2—703 or Section 2—711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; * * *""

If Oloffson chose to proceed under subparagraph (a) referred to, he could have awaited Coomer's performance for a "commercially reasonable time." As we indicate in the course of this opinion, that "commercially reasonable time" expired on June 3, 1970. The Uniform Commercial Code made a change in existing Illinois law in this respect, in that, prior to the adoption of the Code, a buyer in a position as Oloffson was privileged to await a seller's performance until the date that, according to the agreement, such performance was scheduled. To the extent that a "commercially reasonable time" is less than such date of performance, the Code now conditions the buyer's right to await performance. (See Ill. Rev. Stat. Annot. 1969, ch. 26, § 2—610, Illinois Code Comment, Paragraph (a)).

If, alternatively, Oloffson had proceeded under subparagraph (b) by treating the repudiation as a breach, the remedies to which he would have been entitled were set forth in section 2—711 (Ill. Rev. Stat. 1969, ch. 26, § 2—711), which is the only applicable section to which section 2—610(b) refers, according to the relevant portion of 2—711:

"(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2—612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

> (a) 'cover' and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or
>
> (b) recover damages for non-delivery as provided in this Article (Section 2—713). * * *"

Plaintiff, therefore, was privileged under Section 2—610 of the Uniform Commercial Code to proceed either under subparagraph (a) or under subparagraph (b). At the expiration of the "commercially reasonable time" specified in subparagraph (a), he in effect would have a duty to proceed under subparagraph (b) since subparagraph (b) directs reference to remedies generally available to a buyer upon a seller's breach.

■▮■ Oloffson's right to await Coomer's performance under section 2—610(a) was conditioned upon his:

  (i) waiting no longer than a "commercially reasonable time"; and

  (ii) dealing with Coomer in good faith.

Since Coomer's statement to Oloffson on June 3, 1970, was unequivocal and since "cover" easily and immediately was available to Oloffson in the well-organized and easily accessible market for purchases of grain to be delivered in the future, it would be unreasonable for Oloffson on June 3, 1970, to have awaited Coomer's performance rather than to have proceeded under Section 2—610(b) and, thereunder, to elect then to treat the repudiation as a breach. Therefore, if Oloffson were relying on his right to effect cover under section 2—711(1)(a), June 3, 1970, might for the foregoing reason alone have been the day on which he acquired cover.

■■ Additionally, however, the record and the finding of the trial court indicates that Oloffson adhered to a usage of trade that permitted his customers to cancel the contract for a future delivery of grain by making known to him a desire to cancel and paying to him the difference between the contract and market price on the day of cancellation. There is no indication whatever that Coomer was aware of this usage of trade. The trial court specifically found, as a fact, that, in the context in which Oloffson's failure to disclose this information occurred, Oloffson failed to act in good faith. According to Oloffson, he didn't ask for this information:

> "I'm no information sender. If he had asked I would have told him exactly what to do. * * * I didn't feel my responsibility. I thought it his to ask, in which case I would tell him exactly what to do."

We feel that the words "for a commercially reasonable time" as set forth in Section 2—610(a) must be read relatively to the obligation of good faith that is defined in Section 2—103(1)(b) and imposed ex-

pressly in Section 1—203. Ill. Rev. Stat. 1969, ch. 26, § 2—103(1)(b) and § 1—203.

■■ The Uniform Commercial Code imposes upon the parties the obligation to deal with each other in good faith regardless of whether they are merchants. The Sales Article of the Code specifically defines good faith, "in case of a merchant * * * [as] honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." For the foregoing reasons and likewise because Oloffson's failure to disclose in good faith might itself have been responsible for Coomer's failure to comply with the usage of trade which we must assume was known only to Oloffson, we conclude that a commercially reasonable time under the facts before us expired on June 3, 1970.

■■ Imputing to Oloffson the consequences of Coomer's having acted upon the information that Oloffson in good faith should have transmitted to him, Oloffson knew or should have known on June 3, 1970, the limit of damages he probably could recover. If he were obligated to deliver grain to a third party, he knew or should have known that unless he covered on June 3, 1970, his own capital would be at risk with respect to his obligation to his own vendee. Therefore, on June 3, 1970, Oloffson, in effect, had a duty to proceed under subparagraph (b) of Section 2—610 and under subparagraphs (a) and (b) of subparagraph 1 of Section 2—711. If Oloffson had so proceeded under subparagraph (a) of Section 2—711, he should have effected cover and would have been entitled to recover damages all as provided in section 2—712, which requires that he would have had to cover in good faith without unreasonable delay. Since he would have had to effect cover on June 3, 1970, according to section 2—712(2), he would have been entitled to exactly the damages which the trial court awarded him in this cause.

Assuming that Oloffson had proceeded under subparagraph (b) of Section 2—711, he would have been entitled to recover from Coomer under Section 2—713 and Section 2—723 of the Commercial Code, the difference between the contract price and the market price on June 3, 1970, which is the date upon which he learned of the breach. This would produce precisely the same amount of damages which the trial court awarded him. See Ill. Rev. Stat. 1969, ch. 26, § 2—732(1).

Since the trial court properly awarded the damages to which plaintiff was entitled in this cause, the judgment of the circuit court of Bureau County is, therefore, affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.