CARGILL, INCORPORATED, Plaintiff-Appellant and Cross-Appellee,

v.

Van STAFFORD, d/b/a Stafford Elevator, Defendant-Appellee and Cross-Appellant.

Nos. 76–1155 and 76–1156.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 27, 1977.

Decided April 27, 1977.

Thomas L. Roberts, Denver, Colo. (Peter W. Pryor, Walberg & Pryor, Denver, Colo., was with him on the brief), for plaintiff-appellant and cross-appellee.

Carl M. Shinn, Lamar, Colo., for defendant-appellee and cross-appellant.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This diversity jurisdiction case relates to two transactions for the sale of wheat by defendant Stafford to plaintiff Cargill. The court denied recovery on the first and allowed recovery on the second. Both parties have appealed. We affirm except as to the amount of damages recoverable from the second transaction.

Cargill is a cash merchandiser of agricultural commodities. Stafford owns and operates a country grain elevator under the name "Stafford Elevator" in Campo, Colorado. Stafford and his wife run the elevator business. Stafford's brother and son-in-law operate a completely separate grain elevator under the name "Stafford Brothers Elevator" located 35–40 miles from Campo in Keyes, Oklahoma.

On July 23, 1973, Julsonnet, an agent of Cargill, telephoned Stafford about buying some wheat. Stafford said that he had 40,000 bushels of wheat which "I might let you have." Stafford testified that he told Julsonnet to send a confirmation "and if it looks all right, I will sign it and send it back." Julsonnet prepared and mailed a confirmation but addressed it to "Stafford Brothers Elevator, El Campo, Colorado." Mrs. Stafford received the letter and noted the addressee. She knew that Cargill had done business with Stafford Brothers. Without opening the letter, she forwarded it to Stafford Brothers who returned the letter to Stafford Elevator on August 17.

On July 31 Stafford telephoned Julsonnet and said that a protein premium should be included in the confirmation. Julsonnet agreed and promised to send a written confirmation of the contract change. During the same telephone conversation Stafford agreed to sell, and Cargill to buy, an additional 26,000 bushels of wheat. The confirmation of the second sale was correctly made to Stafford Elevator. The confirmation of the contract change on the first transaction was again incorrectly sent to Stafford Brothers Elevator.

On August 21 Stafford wrote Cargill objecting to the provision of the confirmations

giving Cargill an option to cancel and saying: "Thus contract void." An agent of Cargill called Stafford on August 27 and urged him to perform. Stafford insisted that the confirmations were void because of the optional cancellation provisions. Cargill continued to urge performance. After Stafford told Cargill on September 6 that he would not perform, Cargill told Stafford that the contracts were cancelled and that Stafford owed Cargill the difference between the contract prices and the September 6 price. The price of wheat rose from the end of July, reaching a high point on August 21. Stafford refused to pay and Cargill brought suit for breach of the contracts.

The parties agree that Colorado law controls. We first consider the July 23 transaction. The trial court held that recovery was foreclosed because of the statute-of-fraud provisions of the Uniform Commercial Code as adopted in Colorado. The applicable provision is C.R.S. § 4–2–201 which requires something in writing except in specified situations. One of these relates to merchants. Both Stafford and Cargill are merchants within the statutory definition of that term. See § 4–2–104(1). Section 4–2–201(2) says that a writing is sufficient:

"Between merchants, if *within a reasonable time* a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party *unless written notice of objection to its contents is given within ten days after it is received.*" (Emphasis supplied.)

■ The trial court, after reviewing the evidence relating to the Cargill confirmation of the July 23 transaction, the misdirection of the confirmation to Stafford Brothers, and the return of the letter to Stafford Elevator on August 17, said:

"The Court finds the delay in delivery [of the confirmation] was the result of erroneous addressing on the part of the plaintiff [Cargill] and that the confirmation was not received by defendant [Stafford] within 'a reasonable time' within the meaning of Section 2 [§ 4–2–201(2)] of the foregoing statute."

The court also found that the August 21 objection of Stafford to the confirmation because of the cancellation clause was within the ten-day period provided in § 4–2–201(2).

Cargill objects to the court's findings as unsupported by the record. Our review of the evidence convinces us that the findings are supported by substantial evidence and are not clearly erroneous. We are not impressed by Cargill's citation of *Morgan Guaranty Trust Co. of N. Y. v. Third National Bank of Hampden County, Mass.,* D.C., 400 F.Supp. 383, affirmed, 1 Cir., 529 F.2d 1141. That case was concerned with the same provisions of the Uniform Commercial Code as confronts us but the case found implied notice because the defendant did not act reasonably in failing to take appropriate actions. In the case at bar there is ample evidence to sustain a finding that Mrs. Stafford acted reasonably in forwarding the incorrectly addressed letter without inquiry.

■ Cargill urges that Stafford admitted a valid contract covering the July 23 transaction. See § 4–2–201(3)(b). We do not agree. When Cargill's agent called Stafford on July 23, Stafford said that he might make the sale; that he would check over the written confirmation; and "if it looks all right, I will sign it and send it back." Stafford did not sign the confirmation or return it to Cargill. He never admitted the existence of a valid contract.

■ Next, Cargill relies on unjust enrichment as support for recovery on the July 23 transaction. The elements of unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit. See *Dass v. Epplen,* 162 Colo. 60, 424 P.2d 779, 780. Cargill did not perform any services for, convey any rights to, or confer any benefit on Stafford. Because of the

unenforceability of the July 23 contract, Stafford was under no legal obligation to Cargill. There was no benefit for him to accept. If unjust enrichment can be used to gain benefits from executory oral contracts barred enforcement by a statute of frauds, that statute is rendered meaningless. We agree with the trial court that the July 23 transaction does not entitle Cargill to any recovery from Stafford.

We turn to the July 31 transaction. The parties made on the telephone an oral contract for the sale by Stafford of 26,000 bushels of wheat to Cargill. A written confirmation was received by Stafford on August 7. The confirmation was thus received within the "reasonable time" requirement of § 4–2–201(2). Stafford's rejection of the confirmation occurred on August 21, and was not within the ten-day requirement of the statute. Ibid.

■ The Cargill confirmation of the July 31 transaction contained a provision permitting Cargill to cancel and a statement that the contract was subject to the Rules of N.G.F.D.A. [National Grain and Feed Dealers Association]. Stafford contends that these requirements were material alterations which defeat the contract.

Stafford argues that because of the changes made by Cargill there was no mutuality of assent as required by Colorado for there to be an enforceable contract. See e. g. *McCoy v. Pastorius*, 125 Colo. 574, 246 P.2d 611, 615, and *Baum v. Rock*, 106 Colo. 567, 108 P.2d 230, 233. None of the Colorado decisions cited by Stafford involve the version of the Uniform Commercial Code adopted by Colorado in 1965.

■ The Code rejects the subjective test of intent and replaces it with mutuality of assent as manifested by the conduct of the parties. See *Bradford v. Plains Cotton Cooperative Ass'n*, 10 Cir., 539 F.2d 1249, 1253, cert. denied, 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 754, a case involving the Oklahoma version of the Uniform Commercial Code. The applicable provision of the Oklahoma Code is the same as § 4–2–204 of the Colorado Code. In the case at bar Stafford offered by telephone to sell the wheat to Cargill. Cargill's confirmation contained terms which were not discussed on the telephone.

Section 4–2–207(1) provides that a written confirmation received within a reasonable time is an acceptance even though it contains different terms, unless the acceptance is conditioned upon assent to the additional terms. Cargill's confirmation was not predicated on assent to the additional terms. Subsection (2) says that between merchants the additional terms become part of the contract unless (1) acceptance is limited to those new terms, (2) they materially alter the contract, or (3) objection is made within a reasonable time. The option provisions were the addition of a material term. Under § 4–2–207 in transactions between merchants, the addition does not void the contract but the other party is not bound by the new term. It should be noted that *Bradford v. Plains Cotton Cooperative Ass'n* mentioned above was a controversy between a merchant and non-merchants.

Stafford argues that the confirmation reference to the N.G.F.D.A. rules destroys enforceability. If the reference to those rules is a material alteration, the principles noted in our discussion of the option provision are applicable. If the incorporation of the rules was not a material alteration and, hence, under § 4–2–207 a part of the contract, Stafford may not rely on his own lack of conformance to them to avoid liability. See *Foster v. Colorado Radio Corporation*, 10 Cir., 381 F.2d 222, 224. We agree with the trial court that the July 31 transaction resulted in a valid and enforceable contract which was breached by Stafford.

The remaining question is the damages to which Cargill is entitled. The trial court awarded damages in the amount of $27,300 plus interest which was the difference in the price of wheat on September 6 over that on July 31. September 6 is the day on which Cargill acted upon Stafford's statement that he would not perform. The court gave no reason for its selection of the September 6 date. The final day for performance was September 30.

Stafford repudiated the contract by an August 21 letter which was received by Cargill on August 24. Cargill argues alternatively that, (1) it should recover the difference between the price of wheat on August 24 and on July 31, and (2) the difference between the price on September 30 when performance was due and the price on July 31.

Section 4–2–711 provides that when a seller repudiates the buyer may (1) cover (buy substitute goods) and recover the difference in price, (2) recover damages for non-delivery under § 4–2–713, or sue for specific performance under § 4–2–716. Cargill has not attempted to obtain specific performance. The record contains scant, if any, evidence that Cargill covered the wheat. Section 4–2–713 relates to non-delivery and provides:

"Subject to the provisions of this article with respect to proof of market price (section 4–2–723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price *at the time when the buyer learned of the breach* and the contract price together with any incidental and consequential damages provided in this article (section 4–2–715), but less expenses saved in consequence of the seller's breach." (Emphasis supplied.)

The basic question is whether "time when buyer learned of the breach" means "time when buyer learned of the repudiation" or means "time of performance" in anticipatory repudiation cases. See discussion in J. White and R. Summers, Uniform Commercial Code, 197–202 (1972). The authors conclude, Ibid. at 201, that the soundest arguments support the interpretation of "learned of the breach" to mean "time of performance" in the anticipatory repudiation case. We agree for two reasons.

First, before the adoption of the Code in Colorado and other states, damages were measured from the time when performance was due and not from the time when the buyer learned of repudiation. See Colo. Rev.Stat. (1953) § 121–1–67(3), and A. Corbin, 5 Corbin on Contracts, § 1053 at 309

(1964). A clear deviation from past law would not ordinarily be accomplished by Code ambiguities.

■ Second, Code § 4–2–723(1) discusses when to measure damages in a suit for anticipatory repudiation which comes to trial before the time for performance. That section says:

"[A]ny damages based on market price (section 4–2–708 or section 4–2–713) shall be determined according to the price of such goods prevailing at the time when the aggrieved party *learned of the repudiation*." (Emphasis supplied.)

Thus, when the Code drafters intended to base damages on the date a party "learned of the repudiation," they did so by explicit language. We conclude that under § 4–2–713 damages normally should be measured from the time when performance is due and not from the time when the buyer learns of repudiation.

To support its contention that the time when it learned of the repudiation controls Cargill cites two cases. *Sawyer Farmers Coop. Ass'n v. Linke,* N.D., 231 N.W.2d 791 is not helpful because the date for determination of the market price was controlled by a contract provision and not by § 2–713. *Oloffson v. Coomer,* 11 Ill.App.3d 918, 296 N.E.2d 871, is more nearly in point. There the buyer contracted in 1969 with the seller-farmer for delivery of corn in 1970. In June 1970 the seller notified the buyer that he was not planting corn because of weather conditions and would not deliver in September. The buyer refused to cover and urged performance even though he knew there would be none. The court refused to award damages based on the September price but based its award on the price of corn on the June date when the seller notified the buyer that he would not deliver. In so doing the court pointed out that there was an easily accessible market for purchase of the grain, Ibid. 296 N.E.2d at 874, and that the words "for a commercially reasonable time" appearing in Code § 2–610(a) [Colorado § 4–2–610(a)], relating to anticipatory repudiation "must be read relatively to the obligation of good faith that is

defined in Section 2–103(1)(b) [Colorado § 4–2–103(1)(b)] and imposed expressly in Section 1–203 [Colorado § 4–1–203]." Ibid. 296 N.E.2d at 875.

This brings us to § 4–2–712 which provides that the buyer may "cover" by the reasonable purchase of substitute goods. A buyer is allowed to buy substitute goods so long as he does not delay unreasonably. Section 4–2–713 relates to a buyer's damages for nondelivery or repudiation. The official comment to that section says:

> "The general baseline adopted in this section uses as a yardstick the market in which the buyer would have obtained cover had he sought that relief."

■ We conclude that under § 4–2–713 a buyer may urge continued performance for a reasonable time. At the end of a reasonable period he should cover if substitute goods are readily available. If substitution is readily available and buyer does not cover within a reasonable time, damages should be based on the price at the end of that reasonable time rather than on the price when performance is due. If a valid reason exists for failure or refusal to cover, damages may be calculated from the time when performance is due.

Specifically, this means that Cargill had a reasonable time after the August 24 anticipatory repudiation to cover. This reasonable time expired on September 6 when Cargill cancelled the contract. The record does not show that Cargill covered or attempted to cover. Nothing in the record shows the continued availability or nonavailability of substitute wheat. On remand the court must determine whether Cargill had a valid reason for failure or refusal to cover. If Cargill did not have a valid reason, the court's award based on the September 6 price should be reinstated. If Cargill had a valid reason for not covering, damages should be awarded on the difference between the price on September 30, the last day for performance, and the July 31 contract price.

The judgment is affirmed except for the award of damages to Cargill under the July 31 transaction. The case is remanded for determination, in the light of this opinion, of the damages recoverable by Cargill.

Each party shall bear his own costs.