484 So.2d 1275 (1986)
MASON DISTRIBUTORS, INC., Appellant,
v.
ENCAPSULATIONS, INC., Appellee.
No. 85-896.
District Court of Appeal of Florida, Third District.
February 18, 1986.
Rehearing Denied April 2, 1986.
Lamchick, Glucksman & Johnston and Steven Glucksman, Miami, for appellant.
Britton, Cassel, Schantz & Schatzman and Charles H. Lichtman and Jack Britton, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
PER CURIAM.
The appellant, counterplaintiff, sought to offset, against charges admitted due for products received, the amount expended as "cover," following an anticipatory breach of a contract to supply vitamins. The trial court found that a 42 day period was a reasonable time to make "cover."[1] Florida Statute, § 672.712(1) (1983) provides:
"(1) After a breach within the preceding section the buyer may `cover' by making in good faith and without unreasonable delay any reasonable purchase of, or contract *1276 to purchase goods in substitution for those due from the seller."
There is a lack of Florida cases construing this section of the Uniform Commercial Code (UCC). Turning to other jurisdictions we find the following authorities. In Transammonia Export Corporation v. Conserv, Inc., 554 F.2d 719 (5th Cir.1977), the U.S. Court of Appeals applying Florida law held that this section requires a buyer of goods to obtain a "cover" purchase without unreasonable delay, and the delay must be determined from the date of the breach. In Farmers Elevator Company of Elk Pointe v. Lyle, 90 S.D. 86, 238 N.W.2d 290 (1976) the South Dakota Supreme Court stated that the purchaser had a duty to immediately cover, following its learning of the seller's breach. The plaintiff's "cover" was in two installments, over a thirteen day period and was held not unreasonable. The court pointed out that the commodity in question, grain, was easily and immediately available to the purchaser for cover. Similarly, the commodity in the case at bar, vitamins, was also easily and immediately available from a number of sources, of whom the appellant was aware. The Illinois Appellate Court in Oloffson v. Coomer, 11 Ill. App.3d 918, 296 N.E.2d 871 (1973) also ruled that where cover was "easily and immediately available in a well organized and easily accessible market," the buyer immediately should have effected "cover" and the reasonable period in which to so act was limited to the day of the breach. In Dangerfield v. Markel, 278 N.W.2d 364 (N.D. 1979), the Supreme Court of North Dakota held that a buyer's "cover" in several lots over a 38 day period was a purchase made in good faith and without unreasonable delay.
The appellant claims that all of its vitamin purchases made after the breach by Encapsulations, even those that occurred almost a year later, were "cover."
It also appears that the courts consider, in determining the reasonableness of "cover," the extent to which a purchaser attempts to secure "cover." In Productora E Importadora De Papel, S.A. DE C.V. v. Fleming, 376 Mass. 826, 383 N.E.2d 1129 (1978), the Supreme Court of Massachusetts held that evidence that the buyer made few or no inquiries to suppliers of substitute merchandise would tend to show that it acted unreasonably.
At the time of the breach there were four other suppliers of vitamins that could have provided cover: R.P. Scherer, Banner, Pharmacaps and Procaps. The testimony of appellant's purchasing agent established that although it knew about these other companies and their products, yet these suppliers were not contacted, except for their previous supplier, to even discuss obtaining "cover." The appellant bought the vitamins they needed, as they were needed, from their previous suppliers, R.P. Scherer, in the ordinary course of business.
In a United States Department of Agriculture case, Bliss Produce Co. v. A.E. Albert & Sons, Inc., 35 A.D. 742, in interpreting the requirements of "cover" under U.C.C. § 2-712, the court stated that "cover" applies only where the goods purchased are in substitution for those due from the seller. The burden is upon the buyer to show that the purchases made after the seller's anticipatory repudiation, were in fact, a substituted purchase.
What are a reasonable time and effort to "cover" following an anticipatory breach of contract are questions of fact, and as such, any findings as it regards to the facts will not be set aside unless clearly erroneous. Transammonia Export Corporation v. Conserv, Inc., supra; Dangerfield v. Markel, supra; Kiser v. Lemco Industries, Inc., 536 S.W.2d 585 (Tex.Civ. App. 1976).
Under the record in this case, considering the volatile market, we find evidence to support the trial court's finding contained in footnote one and therefore affirm.[2]
Affirmed.
NOTES
[1] "1) That the parties contracted for the purchase and sale of 4,000,000 soya lecithin capsules, 2,000,000 E-400 alpha capsules and 5,000,000 E-400 D L capsules for a total of 11,000,000 vitamins.

2) That less than 11,000,000 vitamins were delivered by ENCAPSULATIONS to MASON DISTRIBUTORS, INC.
* * * * * *
4) That as of July 19, 1983 ENCAPSULATIONS breached its contract to MASON DISTRIBUTORS.
* * * * * *
6) That the prices prior to the industry-wide price increase extended until August 31, 1983, as is indicated by the testimony of ENCAPSULATIONS' Executive Vice-President, Niles Barry and that said date fixed the reasonable time period within which MASON DISTRIBUTORS was obligated to cover their losses."
* * * * * *
[2] This opinion is not to be construed as requiring an innocent party to anticipatory breach of contract to always seek "cover". The only damages attempted to be proved in the instant case were in nature of "cover", i.e. the cost of replacement vitamins at an enhanced price. The innocent party could have simply sued for breach of contract proving his damages as the loss of the bargain. This was not done in the instant case and no attempt was made to prove such damages.