ERIE CASEIN COMPANY, INC., Plaintiff-Appellee, v. ANRIC CORPORATION, Defendant-Appellant.

Third District   No. 3—90—0377

Opinion filed August 23, 1991.

STOUDER, P.J., dissenting.

Katz, McAndrews, Durkee, Lefstein & Fieweger, P.C., of Rock Island (Peter C. Fieweger, of counsel), for appellant.

Ward, Murray, Pace & Johnson, P.C., of Sterling (John A. Guzzardo, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Erie Casein Company, Inc., is a buyer of casein for use as food and feed ingredients. Defendant, Anric Corporation, buys and resells casein on a wholesale basis. Defendant appeals from the trial court's award of money damages to plaintiff for defendant's breach of contracts to supply casein. The primary issue presented is whether plaintiff failed to mitigate damages by not timely obtaining substitute casein. The trial court found that plaintiff properly effected cover, and we affirm.

In January 1986, the parties entered into the first of three contracts for the sale of casein by defendant to plaintiff. In the first contract, plaintiff agreed to purchase 330,000 pounds of New Zealand casein from defendant at $0.805 per pound for delivery in March 1986 (Contract A). Although defendant eventually delivered all of the New Zealand casein contracted for, defendant was unable to meet the March 1986 delivery date.

In May 1986, plaintiff's vice-president and plaintiff's purchasing agent met with defendant's president to discuss defendant's failure to timely fulfill Contract A. Plaintiff declined defendant's offer to supply a different type of casein, but advised defendant that continuing efforts should be made to fulfill Contract A with the New Zealand casein originally contracted for. Thereafter, the parties maintained telephone contact concerning defendant's efforts to supply plaintiff with the Contract A casein.

In November and December 1986, defendant delivered approximately 126,000 pounds of Irish and New Zealand casein in partial fulfillment of Contract A, and received payment from plaintiff at the Contract A price.

With Contract A only partially completed, the parties entered into a second contract (Contract B) in February 1987 for 165,000 pounds of New Zealand casein at $1.0725 per pound for delivery not later than the end of March 1987.

In March 1987 the parties entered into a third and final contract (Contract C) for 80,000 pounds of Irish casein at $1.0975 per pound for delivery in the middle of March 1987.

During the first two weeks of March 1987, defendant delivered various quantities of casein sufficient to meet the remaining quantity called for under the terms of Contract A, and all but 10,802 pounds of the quantity called for in Contract C.

Plaintiff's vice-president and defendant's president met again in April 1987. Defendant's president acknowledged that his company would not be able to supply any New Zealand casein at that time, but said the casein could be available in late 1987.

Following the March 1987 deliveries, defendant's president had several telephone conversations with plaintiff's purchasing agent concerning payment of the now outstanding invoices from those deliveries. The parties agreed that the invoices would be paid at the Contract A price, with additional quantities paid at the Contract C price. Upon plaintiff's receipt from defendant of written confirmation of the modification, plaintiff wired payment to defendant's bank.

Defendant still showed a deficiency of approximately $55,000 as a result of plaintiff's payment at the Contract A price for defendant's deliveries of casein originally intended to fulfill Contracts B and C. Following

discussions by the parties, defendant's president executed a promissory note in July 1987 in the principal amount of $54,927.43. The promissory note was in the exact amount of the deficiency resulting from plaintiff's payment at the Contract A price for the Contract B and Contract C casein.

Defendant never delivered the remaining 10,802 pounds due under Contract C, nor any amounts due under Contract B. To fulfill its need for additional casein, plaintiff attempted to purchase casein on the open market. By the time comparable casein was available for purchase in August 1987, the price had risen to $1.45 per pound.

In November 1987, plaintiff filed a complaint to recover damages resulting from defendant's failure to deliver the casein due under Contracts B and C. Defendant raised as an affirmative defense plaintiff's failure to mitigate damages by not obtaining substitute casein without unreasonable delay. Defendant also counterclaimed for unpaid charges from casein delivered under Contracts B and C. The trial court, sitting without a jury, entered judgment in favor of plaintiff in the amount of $66,095.20, and against defendant on its counterclaim. Defendant appeals. We affirm.

Defendant presents three issues for review:

(1) Whether plaintiff failed to mitigate damages by not obtaining substitute casein;

(2) Whether the parties modified Contract A to include a rescission of part of the contract; and

(3) Whether defendant's agreement to modify Contracts B and C resulted from economic duress imposed by plaintiff.

Defendant maintains that provisions of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1989, ch. 26, par. 1—101 *et seq.*) and Illinois case law require plaintiff to obtain substitute casein within a reasonable commercial time and without unreasonable delay. Defendant argues that plaintiff should have effected cover following the first meeting between the parties in May 1986.

A buyer effects cover, under the Uniform Commercial Code, by "making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." Ill. Rev. Stat. 1989, ch. 26, par. 2—712(1).

According to the official comment to section 2—712 of the Code, "[t]he requirement that the buyer must cover 'without unreasonable delay' is not intended to limit the time necessary for him to look around and decide as to how he may best effect cover. The test here is similar to that generally used in this Article as to reasonable time and seasonable action." (Ill. Ann. Stat., ch. 26, par. 2—712, Uniform Commercial Code Comment 2, at 561 (Smith-Hurd 1963).) Section 1—204 of the Code states

that "a reasonable time for taking any action depends on the nature, purpose and circumstances of such action," and that "[a]n action is taken 'seasonably' when it is taken[,] *** if no time is agreed[,] within [a] reasonable time." Ill. Rev. Stat. 1989, ch. 26, pars. 1—204(2), (3).

■ We agree with the trial court's finding that plaintiff reasonably relied upon defendant's continued assurances that the Contract A casein (originally scheduled to be supplied in March 1986) would eventually be delivered. The trial court properly found that plaintiff had no duty to effect cover prior to April 1987, when defendant first acknowledged at a meeting between the parties that it would be unable to deliver the casein. Upon being so informed, plaintiff made efforts to obtain substitute goods. Despite plaintiff's attempts, sufficient casein was not available until August 1987 because of a market shortage. Under these circumstances, we do not find the delay unreasonable. We find, therefore, that the trial court properly awarded damages based upon the August 1987 market price of $1.45 per pound. See *Lyntel Products, Inc. v. Alcan Aluminum Corp.* (1981), 107 Ill. App. 3d 176, 437 N.E.2d 653.

■ Defendant cannot complain about the plaintiff effecting cover in a rising market, since plaintiff apparently experienced the same difficulties obtaining substitute casein that defendant did in first attempting to supply the Contract B and Contract C casein. Comment 2 to section 2—712 of the Code provides "[t]he test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." Ill. Ann. Stat., ch. 26, par. 2—712, Uniform Commercial Code Comment 2, at 561 (Smith-Hurd 1963).

■ Defendant argues the parties modified Contract A to provide that New Zealand casein need only be delivered if casein became available to defendant from its supplier. Defendant also argues the contract was rescinded following the partial deliveries in November and December 1986. Defendant maintains that from the parties' meeting in May 1986, it was clear to both that defendant could not perform Contract A. However, the trial court specifically found it was not until April 1987 that defendant acknowledged its inability to obtain casein from its New Zealand supplier. The trial court also found the parties applied a portion of the March 1987 deliveries to complete Contract A. We agree with the trial court's finding that the remaining terms of the contract continued in effect so that defendant was still obligated to provide all the casein originally contracted. We recognize the trial court heard conflicting testimony as to when and whether defendant repudiated Contract A or if the parties agreed to rescind part of the contract. Under circumstances where the

trial court has heard and observed the witnesses and their testimony is contradictory, a reviewing court will not substitute its judgment for that of the trial court as to the credibility of witnesses. Nor will a reviewing court disturb the trial court's findings unless they are manifestly against the weight of the evidence. *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518, 523.

▮ Finally, we reject defendant's contention that economic duress caused the application of the March deliveries to fulfill Contract A and the execution of a promissory note for the difference in price between Contract A and the invoiced deliveries. Defendant argues it was forced to execute the promissory note in order to receive any payment at all from plaintiff, and the payment actually received was at the lower Contract A rate. The theory of economic duress requires a party to show that he was induced to enter into a contract by some wrongful act of the other contracting party. (*Herget National Bank v. Theede* (1989), 181 Ill. App. 3d 1053, 1057, 537 N.E.2d 1109, 1112.) The trial court properly found, under all the circumstances, that neither the parties' agreement to write down the invoices by approximately $55,000 nor defendant's execution of a note in the same amount was the result of economic duress. The multiple contracts and open communication between the parties reflect a continuous course of conduct between very skilled business people. The promissory note was prepared by defendant's attorney at his office, executed by defendant's president, and then mailed by defendant's attorney to plaintiff. Such professional acts were not the result of duress. There is substantial evidence in the record to support the trial court's findings.

The judgment of the trial court is affirmed.

Affirmed.

GORMAN, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I must respectfully dissent from that portion of the opinion relating to the issue of damages. In *Oloffson v. Coomer* (1973), 11 Ill. App. 3d 918, 296 N.E.2d 871, this court clarified the rights and duties of a buyer confronted with a repudiating seller. In April of 1970, Coomer, a farmer, contracted with Oloffson, a grain dealer, to sell Oloffson 40,000 bushels of corn at a price of $1.125 per bushel. Delivery of the first 20,000 bushels was to be made on or before October 30, 1970. The remaining 20,000 bushels were to be delivered on or before December 15, 1970. On June 3, 1970, because of an unusually wet spring, Coomer advised Oloffson that he was not going to plant corn that season. On that date, the price of a

bushel of corn for future delivery was $1.16 per bushel. In September of 1970, Oloffson requested Coomer to deliver the corn and Coomer replied that he would not be able to do so. Oloffson then purchased 20,000 bushels of corn at $1.35 per bushel and 20,000 bushels at $1.49 per bushel to cover the corn not delivered by Coomer. The trial court held, and we affirmed, that Oloffson was entitled to recover $1,500, the difference between the cost of corn on June 3, 1970, the date that Coomer informed Oloffson that he was not going to supply the corn, and the price of corn under the parties' contract.

Moreover, in affirming the trial court's ruling, we noted that under section 2—610 of the Uniform Commercial Code—Sales (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 2—610), after a party repudiates a contract, the aggrieved party may for a commercially reasonable time period await performance by the repudiating party or resort to any remedy for breach under UCC section 2—711. (Ill. Rev. Stat. 1989, ch. 26, par. 2—711.) As of June 3, 1970, Oloffson knew that if he didn't cover the Coomer corn contract he would be at risk to his vendees-third-parties and therefore he had a duty to proceed under sections 2—610 and 2—711(1) so as to effect cover. Therefore, because his damages were limited to the difference between the market price and the cost of cover goods obtained in good faith without unreasonable delay, he could not recover the excess damages claimed due to his waiting approximately four months to obtain the cover or substitute goods.

Similarly, the plaintiff in the instant case was fully aware in March of 1986, before and at the time of nondelivery of the casein, that the defendant could not and would not perform the contract. In May of 1986, when the plaintiff and the defendant discussed this very issue it was clear that the January 1986 contract was repudiated and was not to be performed in accordance with its terms. It was at this juncture that the defendant offered to purchase substitute casein at a loss of $7,000. Thus, I agree with the defendant's contention that the buyer-plaintiff had a duty to mitigate damages by obtaining substitute cover within a commercially reasonable time period following repudiation of the contract of sale.

The plaintiff, however, waited 17 months after it knew the casein could not be delivered before it purchased substitute goods or "cover." By awarding the plaintiff damages based on the difference between the market price of casein in August of 1987, $1.45 per pound, and the market prices of $.805 per pound in January 1986 and $1.0725 per pound in February 1987, which were the contract prices under the January 1986 contract and the February 1987 contract, the trial court ignored the applicable law. The majority opinion fails to adequately explain why the market prices for casein in January or March of 1986 were not used by the trial

court to compute damages. It is not coincidence that the plaintiff conveniently cries foul when the market price for casein is extremely high. The plaintiff's actions are devoid of good faith and should not be rewarded. Thus, I find the maximum damages recoverable by the plaintiff here to be $7,000.

I therefore must dissent from that portion of the opinion.