McKENZIE DREDGING COMPANY, INC., Plaintiff-Appellant, v. DE-
NEEN RIVER COMPANY, INC., *et al.*, Defendants-Appellees.—McKEN-
ZIE DREDGING COMPANY, INC., Plaintiff-Appellee, v. DENEEN RIVER
COMPANY, INC., *et al.*, Defendants-Appellants.

Third District Nos. 3—92—0801, 3—92—0836 cons.

Opinion filed August 17, 1993.

Barash, Stoerzbach & Henson, of Galesburg (John W. Robertson, of counsel), for McKenzie Dredging Company, Inc.

Law Office of Kevin R. Galley, of Lacon (Kevin R. Galley, of counsel), for Deneen River Company, Inc., *et al.*

JUSTICE SLATER delivered the opinion of the court:

Plaintiff McKenzie Dredging Company entered into a joint venture agreement with Deneen River Company (Deneen) to do construction work on navigational locks at Quincy, Illinois, and Saverton, Missouri, for the Army Corps of Engineers. After completion of the project, plaintiff filed an action for an accounting and other damages against Deneen. While the suit was pending, Deneen sold its assets and the corporation was dissolved. Melvin, Justine, Vernon and

Charlene Budd, the former shareholders of Deneen, were then joined as defendants. Following a bench trial, the trial court entered a judgment in favor of plaintiff for $44,174.77. Plaintiff's sole issue on appeal is its claim that the court erred in denying its request for prejudgment interest. Defendants have also appealed, contending that the trial court erred by: (1) disallowing payment of $53,050 to Melvin Budd, Sr., for supervising the project; and (2) disallowing payment for use of Deneen's "floating plant" (barge, crane, tugboat, etc.) and equipment. We affirm.

The joint venture agreement was entered into by the parties on October 25, 1985. The agreement provided for, *inter alia*, the allocation of personnel expenses, out-of-pocket expenses and the rental of construction equipment and "floating plant" used on the project. After allocation of these charges, the parties were to equally divide any profits or loss. The agreement also provided that William Ashton, the engineer of the project, was to act as arbitrator of any disputes and as trustee of any payments made by the Corps of Engineers. Ashton did not act in either capacity, however, and the payments made by the Corps of Engineers were deposited in Deneen's general account. These payments totalled $626,982.55, and Deneen paid plaintiff $84,412.85.

After the project was completed in September of 1986, Deneen hired accountant Clyde Martin to prepare a cost summary of the job. Martin did not include charges for the rental of plaintiff's floating plant, even though such charges were expressly provided for in the joint venture agreement. Martin did allow, however, rental charges for the use of Deneen's floating plant. Martin concluded that the project lost money and that plaintiff owned Deneen over $78,000.

Gene Ginoli, a certified public accountant, was Martin's employer. Ginoli reviewed Martin's work but he did not independently verify it. Ginoli testified that they were instructed to cost the job out without regard to the joint venture agreement because Melvin Budd, Sr., president of Deneen, felt that the agreement had been substantially violated.

Cecil Cox, a certified public accountant, testified for plaintiff. Cox concluded that the project lost $277,643.66 if owned equipment and floating plant rentals were allowed to both parties. According to Cox, if these charges were allowed, plaintiff was owed $145,531.60. If these charges were disallowed, however, the project earned a profit of $120,303 and plaintiff was owed $67,429.21.

After six days of testimony, the trial concluded on May 24, 1992, and the trial court issued a letter of opinion on August 7, 1992. The

court found in favor of plaintiff for $52,691.52, but it rejected plaintiff's request for prejudgment interest. The court stated that the agreement did not provide for interest and "the history of the agreement would not seem to justify the same." The court also noted that Ashton's refusal to act as arbitrator was beyond the control of the parties. Both plaintiff and the defendants filed post-trial motions and the court issued its final order on September 30, 1992. The court corrected a computational error and entered judgment in favor of plaintiff for $44,174.77. The court again denied plaintiff's claim for prejudgment interest, finding that the amount owed was disputed and that there was no showing that Melvin Budd, Sr., was not acting in good faith and with a reasonable belief in his position. The court also noted that the litigation was controlled by the plaintiff, that a bench trial may be called to hearing in Marshall County within 30 to 45 days, and that to allow plaintiff "to proceed with this matter for over five years and then claim interest would not seem to be well founded." As indicated earlier, both plaintiff and defendants have appealed from the trial court's order.

We first address plaintiff's argument that the trial court erred in denying its request for prejudgment interest. Plaintiff first contends that money wrongfully retained by one party to a joint venture is subject to a constructive trust, even if that party acted in good faith. Therefore, plaintiff argues, the trial court erred in denying prejudgment interest on the basis that Melvin Budd had a reasonable belief in his position and was acting in good faith.

■ Even assuming, however, that a constructive trust may be imposed where a defendant acts in good faith, we find that such a proposition has little relevance to the question of whether to allow prejudgment interest. The imposition of a constructive trust and the award or denial of prejudgment interest are separate issues, and we find plaintiff's attempt to equate the two unpersuasive.

Plaintiff next maintains that an equitable award of prejudgment interest is intended to fully compensate the plaintiff, rather than punish the defendants. Plaintiff relies on *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 535 N.E.2d 876, where the court stated:

> "The rationale underlying an equitable award of prejudgment interest in a case involving a breach of fiduciary duty is to make the injured party complete by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money. [Citations.] The injured party is thus compensated for any economic loss occasioned by the inability to use his money. Prejudgment interest in this context acts as a

concept of fairness and equity and not as a sanction against the defendant. [Citation.] Fundamental principles of damages and compensation dictate that when money has been wrongfully withheld the victim receive interest for the wrongdoer's retention of his money." *Wernick*, 127 Ill. 2d at 87, 535 N.E.2d at 888.

We agree, of course, that the purpose of awarding prejudgment interest is to fully compensate a party when its money has been wrongfully withheld. We do not agree, however, that this concept mandates an award of prejudgment interest in every case involving a dispute between joint venturers. As the *Wernick* court pointed out:

"In Illinois, prejudgment interest may be recovered when warranted by equitable considerations, and disallowed if such an award would not comport with justice and equity. [Citations.] *** Whether equitable circumstances support an award of interest is a matter lying within the sound discretion of the trial judge. [Citations.] Such a determination will not be disturbed on review unless it constitutes an abuse of discretion." *Wernick*, 127 Ill. 2d at 87, 535 N.E.2d at 888.

Plaintiff next contends that the trial court implicitly suggested that plaintiff had the burden of proving that defendants had acted in bad faith when it noted that "there is no showing that [Melvin Budd] was not acting in good faith and with a reasonable belief in his position under the circumstances." Plaintiff argues that defendants had the burden of producing an accounting because they managed or controlled the joint venture.

Once again, while plaintiff has correctly stated the law, we find that it has little relevance to the issue of prejudgment interest. A party managing or controlling a joint venture and possessing the records of the venture has the burden of producing the accounting, and any errors or omissions are resolved against the party producing it. (*Kennedy v. Miller* (1991), 221 Ill. App. 3d 513, 582 N.E.2d 200.) The issue here is not, however, whether the defendants produced a satisfactory accounting. The issue is whether the circumstances of the case, viewed in their totality, warranted an award of prejudgment interest. We find no error by the trial court in considering defendants' good faith as a factor in making this determination, nor do we find any improper shifting of the burden of proof.

Plaintiff next argues that, in denying prejudgment interest, the trial court improperly relied on the fact that the amount owed was disputed. Plaintiff correctly notes that a court of equity is not precluded from awarding prejudgment interest merely because the

amount due to plaintiff was uncertain. (See, *e.g.*, *Kennedy*, 221 Ill. App. 3d 513, 582 N.E.2d 200; but *cf. Alguire v. Walker* (1987), 154 Ill. App. 3d 438, 506 N.E.2d 1334 (award of *statutory* prejudgment interest is improper unless damages are liquidated or subject to exact computation).) We find, however, that it is not improper for a court to consider the uncertainty of plaintiff's right to recover, or the difficulty of ascertaining the amount of recovery, as factors in determining the propriety of awarding prejudgment interest. Obviously, if plaintiff's right to recover was clear, and the amount due was easily ascertainable, those factors would weigh in favor of awarding interest. We find no error.

■ Plaintiff next cites as error the trial court's statement that "the litigation was controlled by the [p]laintiff, and the [c]ourt would take notice of its docket that in Marshall County, a person may call a bench trial to hearing at any time within 30 to 45 days. To allow the [p]laintiff to proceed with this matter for over five years and then claim interest would not seem to be well founded." Plaintiff contends that the court's statement indicates that it was ruling against plaintiff based on *laches* or estoppel, defenses which were never pleaded by defendants. We disagree. The court's order makes no reference to either *laches* or estoppel as a basis for its ruling. The court was merely citing the lengthy period of litigation as an additional factor in support of its decision to deny prejudgment interest. We note that plaintiff's complaint was filed on March 12, 1987, and that trial began on May 26, 1992.

Plaintiff further argues that any delay in bringing the case to trial was inherent to the proceedings or was attributable to the defendants. Plaintiff points out that Deneen initially opposed an accounting, later objected to producing certain documents and had to be ordered to answer interrogatories. While we agree with plaintiff that it was not entirely responsible for the delay in bringing this case to trial, we do not believe that it was erroneous for the court to attribute some of the five-year delay to plaintiff and to consider it as a factor in denying prejudgment interest. We note, for example, that after plaintiff filed its reply to Deneen's answer and its answer to Deneen's counterclaim on May 22, 1987, the record reflects that there was no activity until Deneen filed a notice of deposition on May 9, 1988. The next activity of record was on April 5, 1989, when Deneen filed another notice of deposition. Under the circumstances, we find no error.

■ Finally, plaintiff maintains that because the trial court committed errors of both law and fact, its decision to deny prejudgment interest is entitled to no deference and may be independently re-

viewed by this court. As we have indicated above, however, the trial court did not err in its consideration of the various factors presented by this case. Therefore, the trial court's decision to deny prejudgment interest may not be disturbed unless it constitutes an abuse of discretion. (*Wernick*, 127 Ill. 2d 61, 535 N.E.2d 876.) After reviewing the record in this case, we believe that the trial court could properly have awarded prejudgment interest to the plaintiff. In determining whether the court abused its discretion, however, the issue is not whether this court agrees with the circuit court's decision. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 572 N.E.2d 1119.) An abuse of discretion occurs only when no reasonable person would take the position adopted by the trial court. (*Vaughn v. Northwestern Memorial Hospital* (1991), 210 Ill. App. 3d 253, 569 N.E.2d 77.) We are unable to fairly conclude that the trial court's decision to deny prejudgment interest was unreasonable, and we find no abuse of discretion.

We next consider the defendants' contention that the trial court's decision was against the manifest weight of the evidence in two respects. First, defendants argue that the trial court erred in finding that Melvin Budd, Sr., was not entitled to compensation in the amount of $53,050 for his services to the project. Defendants maintain that their claim is supported by the personnel records of Deneen, wherein Melvin Budd, Sr., recorded the hours he spent working on the project. Defendants also rely on the testimony of John Budd and Melvin Budd, Jr., employees of Deneen, that their father, Melvin Budd, Sr., worked on the project in a supervisory capacity and also performed other labor as circumstances required.

Plaintiff responds by citing the testimony of its president, Robert McKenzie, that he and Melvin Budd, Sr., agreed that Deneen's supervisor would be Melvin Budd, Jr., and plaintiff's supervisor would be Wayne Dennison. Paragraph 3(d) of the joint venture agreement provided that only working personnel were to be charged to the contract and supervision was limited to one man per day per company. Plaintiff also notes the testimony of its accountant, Cecil Cox, that in his opinion, the $53,050 for labor by Melvin Budd, Sr., should not have been charged to the contract.

The trial court found that both parties brought their expertise into the joint venture and both were principals with an interest in sharing in the profits of the project. The court ruled that there was no basis for either principal to charge for his time and services, and that to do so would directly conflict with paragraph 3(d) of the agreement.

.

 This court must defer to the findings of the circuit court unless they are contrary to the manifest weight of the evidence. (*In re Estate of Wessels* (1990), 203 Ill. App. 3d 1080, 561 N.E.2d 1212.) A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. (*Mobil Oil Corp. v. City of Rolling Meadows* (1991), 214 Ill. App. 3d 718, 574 N.E.2d 41.) When a trial court has heard and observed the witnesses and their testimony is contradictory, a reviewing court will not substitute its judgment for that of the trial court. (*Erie Casein Co. v. Anric Corp.* (1991), 217 Ill. App. 3d 602, 577 N.E.2d 892.) We find that the trial court's ruling is amply supported by the testimony of Robert McKenzie concerning the agreement regarding supervisory personnel. The court's finding that paragraph 3(d) of the agreement precluded either Melvin Budd, Sr., or McKenzie from charging for his services is not against the manifest weight of the evidence.

Defendants' remaining contention is that the court erred in not allowing payment to Deneen for use of its floating plant and equipment. The joint venture agreement originally contemplated that only plaintiff's floating plant would be used, and paragraphs 3(h) and 3(i) specified the rental rates and that the rental cost would be prorated according to use of the plant at each jobsite. At an early stage in the project, however, the parties agreed to bring in Deneen's floating plant because a larger crane was needed. There was testimony that plaintiff's equipment was also used for various operations, however. Melvin Budd, Sr., kept a record of equipment usage during the course of the project. Defendants maintain that the trial court should have calculated the rental rates for Deneen's floating plant based on the rental rates set forth in paragraph 3(h) of the agreement. The trial court found that the parties never reached an agreement concerning the cost for Deneen's equipment. The court determined that "the spirit and intent of the agreement may still be maintained and a proper accounting made without regard to assignment of rental costs, and further that the parties have by their actions waived claims for the same."

▪ We find that the court did not err in disallowing equipment rental costs to both Deneen and plaintiff. The joint venture agreement specified rental rates only for use of plaintiff's floating plant, not Deneen's. When it became necessary to use Deneen's equipment, the parties, by their actions, modified the agreement. Under the circumstances, the court could have accepted the computation of Deneen's accountant that its rental costs were $160,920. The court could also have accepted the figures of plaintiff's accountant indicating that

Deneen's rental costs were $109,883.11 and that the cost for renting plaintiff's equipment was $251,887.45. Rather than attempting to reconcile these conflicting accounts, however, the court chose to disallow equipment rental costs to both parties as a means of more accurately reflecting the actual cost of the project. Obviously, the court's goal was to achieve a result that was fair and equitable to both sides, and we believe that it succeeded. We find that the trial court's decision was not against the manifest weight of the evidence.

For the reasons stated above, the judgment of the circuit court is affirmed in all respects.

Affirmed.

BARRY and LYTTON, JJ., concur.