Community Savings and Loan Association, a Corporation, Plaintiff-Appellant, v. The Cosmopolitan National Bank of Chicago, a National Banking Association, as Trustee Under Trust No. 9731 dated April 18, 1960, John Borghi, et al., Defendants-Appellees.

Gen. No. 50,677.

First District, Third Division.

June 23, 1966.

Rehearing denied July 14, 1966.

Henry T. Synek and David I. Herbst, of Chicago, for appellant.

Benedek & Benedek and Norman Crawford, of Chicago, for John Borghi, appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This case involves a dispute over the distribution of rents collected by a receiver of mortgaged premises during the one-year period of redemption following a foreclosure sale. Community Savings and Loan Association (Association), the mortgagee, has appealed from a judgment for $6,733.04 entered against it and in favor of John Borghi, sole holder of the beneficial interest under a land trust in which Cosmopolitan National Bank of Chicago (Bank), the mortgagor, was trustee. The judgment was rendered in a proceeding pursuant to section

72 of the Civil Practice Act and was an aftermath of proceedings to foreclose the mortgage given by the Bank to the Association. At the outset of the foreclosure proceedings a receiver had been appointed, and in due course pursuant to a decree of foreclosure a sale was had at which the Association bid in the property for the full amount of the indebtedness. At the expiration of the period of redemption the receiver had on hand the sum of $8,233.04. On July 2, 1964, the court entered an order which recited that the cause came on to be heard upon the motion of the Association for approval of the receiver's report, setting the receiver's fees, directing the receiver to turn over the balance of the funds on hand to the Association, and for the discharge of the receiver. The order concluded that all persons in interest had been duly served with notice and that the court had been fully advised in the premises. As a matter of fact no notice was served on the Bank or on Borghi, the real party in interest, whose appearance and answer had been duly filed in the foreclosure suit long prior to the entry of the order. The court in the July 2 order allowed the receiver $1,500 and ordered that he forthwith pay to the Association the balance of the cash on hand, to apply on the payment of the 1962 and 1963 real estate taxes, both of which were then delinquent. The Association thereafter paid the taxes.

More than thirty days after the entry of the order Borghi filed a petition under section 72, seeking to have the order set aside. The petition alleged that no notice of the motion for entry of the order had been given to Borghi or his attorney. It further alleged that had due notice been given, the court would not have ordered any further payments to the Association, as the indebtedness due it had been satisfied out of the proceeds of the sale of the mortgaged property. Petitioner prayed that the court vacate the order of July 2, 1964, and that it direct the Association to account and pay to the peti-

tioner, as owner of the equity of redemption, the sums received by the Association from the receiver and award judgment in the sum of $6,733.04 in favor of petitioner and against the Association. The court at first was of the opinion that the order should not be vacated and so decided, but in due time came to a contrary conclusion and on motion entered the judgment from which this appeal is taken.

The Association contends that the July 2 order was merely in compliance with an order entered on April 8, 1963, appointing the receiver; that the April 8 order directed the receiver to pay taxes; and that because Borghi failed to object to that order, failed to move to vacate or modify it, failed to appeal from it, and failed to notify the receiver that he would be held responsible for funds applied to the payment of taxes, he is estopped by laches or res judicata from "indirectly attacking said order of April 8, 1963 by attacking the order entered on July 2, 1964."

For a full understanding of the case it is necessary to set out the facts in some detail. In 1962 the Bank, as trustee under a land trust, signed a note for $50,000 payable to the Association and executed a mortgage and assignment of rents to secure the debt. The note obligated the mortgagor to pay along with each monthly installment of principal and interest one-twelfth of the estimated taxes and assessments on the mortgaged property and neither the mortgagor nor any person beneficially interested in the property was subject to personal liability.

In February, 1963, the Association brought suit to foreclose the mortgage, alleging default in the payment of principal and interest. In its complaint, an accounting of sums due the Association was sought, including principal and interest in the sum of $49,781.30, attorneys' fees of $3,000, future expenses, and "such other sums of money as plaintiff will be obliged to advance for the

205

payment of taxes and special assessments." The petitioner, the Bank and other parties interested in the premises appeared and defended.

On April 8, 1963, on motion of the Association for the appointment of a receiver pendente lite, a temporary receiver was appointed to take possession of the property and to "have the usual powers of receivers in like cases, including the power to rent said premises and to collect the rents thereof, and out of the income from said premises to maintain the same in necessary repair, to keep the same insured, to pay taxes, assessments and water rates thereon, all without requiring separate and further orders from this Court for each such expenditure and to hold the net proceeds subject to the further order of this Court." This order will hereinafter be referred to as the April 8 order.

On May 7, 1963, the Association filed an affidavit pursuant to statute (Ill Rev Stats, c 95, § 22b (1963)) that the sum of $53,366.28 was due and owing for principal, interest, attorneys' fees and expenses, and that in addition further sums would become due for title expenses, court costs, "Receiver's fees, and such other sums for repairs and maintenance . . . which likewise will become a charge under and by virtue of the terms of said mortgage." *It is significant that the affidavit, unlike the complaint, set forth no claim for taxes.* The foreclosure decree was entered on the same date, fixing the amount of the lien at $53,366.28. Like the affidavit, the decree made no allowance for taxes so that unpaid taxes were not declared in the decree to be a part of the lien of the mortgage.

On June 6, 1963, the Association bid in the property at the Master's Sale for $54,069.39. The court entered a decree confirming the Master's report and finding that after deducting the costs and fees involved in the sale, there was no deficiency due the Association. The decree also reserved jurisdiction of the cause "for the purpose

of appointing a receiver of the premises . . . during the running of the period of redemption, in case application is made for such appointment, and in case the court decides that a receiver should be appointed." However, the temporary receiver who had been appointed by virtue of the April 8, 1963 order remained in possession until June 6, 1964, the date of the expiration of the statutory period of redemption, and no other receiver was ever appointed.

On July 2, 1964, *without notice* having been given to any interested parties, the receiver's first and final report and account was filed and confirmed by the court. The Association nevertheless was present. The report represented that a Master's Deed had been issued to the Association and possession of the premises surrendered to it and that during the receiver's possession the sum of $10,177.50 in rents had been collected and disbursements of $1,939.46 had been made for "maintenance and current expenses," leaving a balance of $8,233.04. The report further represented that 1962 and 1963 real estate taxes on the premises were unpaid and that "pursuant to an order of court heretofore entered, [the receiver] was obligated to pay such taxes" and "that in lieu of the payment of such taxes he requests an order of court directing him to turn the funds over to the plaintiff herein [the Association] for the purpose of payment of such taxes." A receiver's fee of $1,500 was awarded and the court ordered the balance, $6,733.-04, to be paid to the Association as requested, reciting, however, that the distribution was made on motion of the Association. The Association applied the sum, together with its own funds, to the payment of some $15,-000 in back taxes for 1962 and 1963, the lien for which had attached before the foreclosure sale.

On October 29, 1964, Borghi filed a petition under section 72 of the Civil Practice Act, alleging lack of notice and asking that the court modify the order of July

2, 1964, by directing that the Association pay to him as the owner of the equity of redemption all sums of money which it received from the receiver pursuant to the order. After initially denying the petition, as before stated, the court found the issues in favor of the petitioner and entered the judgment in question.

 The controlling principles of law have been well settled for generations and are not here in dispute. The purchaser at a judicial sale takes the property subject to all outstanding liens thereon. Davis v. Dale, 150 Ill 239, 37 NE 215. After the sale and during the running of the period of redemption (see Ill Rev Stats, c 77, § 18 (1965)), the possession and enjoyment of the premises remain with the owner of the equity of redemption, subject to the right of the mortgagee, if so provided in the mortgage or otherwise, to have possession and enjoyment insofar as necessary to satisfy the debt. Standish v. Musgrove, 223 Ill 500, 506, 79 NE 161; Chicago Joint Stock Land Bank v. McCambridge, 343 Ill 456, 461, 175 NE 834. In Davis v. Dale, supra, these principles were applied to prevent a receiver from applying sums collected as rents and profits during the period of redemption to the payment of taxes that accrued during the same period. The court in that case emphasized that the purchaser at the foreclosure sale "took the estate . . . subject to all prior liens to which it would have been subject in the hands of the mortgagor" and that absent redemption, any payment of taxes by the receiver would inure to the benefit of the purchaser. (Pages 244, 245.) In Bothman v. Lindstrom, 221 Ill App 262, 266, 267, this rule was applied to taxes that accrued before the foreclosure sale, as in the instant case. See Stevens v. Hadfield, 196 Ill 253, 256, 63 NE 633; 2 Reeves, Illinois Mortgages, § 564; cf. Powell v. Voight, 348 Ill 605, 608, 609, 181 NE 403; Builder's Bond & Mortgage Co. v. Bickley, 274 Ill App 638, 646, 647; Verst v. Fore-

man-State Trust & Savings Bank, 270 Ill App 484, 486 (dictum).

The Association admits that this is the law, but it earnestly argues that the April 8 order obligated the receiver to pay taxes and in reliance thereon it assumed that the property would be conveyed to the Association free of tax liens. It argues that the petitioner who was party defendant and who was in court when the order of April 8 was entered had a duty to object to or appeal from the order appointing the receiver or so much of it as directed the payment of taxes, and that his failure to do so bars his present claim either because he is guilty of laches or because the April 8 order is res judicata of the issues here involved. This is a misunderstanding of the nature of that order. It did not create an obligation on the part of the receiver to pay taxes, but granted him authority to do so along with authority to make other disbursements that might be necessary in the performance of his duties.

The procedures at a foreclosure sale must be on the assumption that the bidding will be competitive. A purchaser at such a sale, whether he be a stranger, a mortgagee or a creditor, cannot expect that the property would by virtue of such an order be acquired free of all tax liens and base his bid on that assumption. If the order had affirmatively directed that taxes on the property were to be paid out of funds in the hands of the receiver, it is by no means implausible that other bidders would have been attracted to bid at a price higher than that paid by the Association. Furthermore, it is difficult to see any basis on which the petitioner might have contested the April 8 order because a mortgagee has a well established right to a receiver pendente lite if necessary to protect his security, with the powers there provided. See Ill Rev Stats, c 95, § 23.6 (G) (1963). It is true that the continued possession by the *temporary*

receiver after the foreclosure sale might have been successfully challenged by the petitioner, but his failure so to do in no way prejudiced the Association, whose bid by that time had been made and accepted.

The Association relies on Reardon v. Youngquist, 189 Ill App 3, where a receiver was sought to be surcharged for certain allegedly improper disbursements, including a tax payment made pursuant to a court order which explicitly directed the payment of a specific sum for a specific tax. The court held that the receiver could not be made personally liable since the interested parties had been given notice to the order to pay the tax in question and did not object. Failure to object, the court said, "savors of an attempt to entrap the receiver. . . ." (P 13.) In the *instant* case the April 8 order *authorized* but did not direct the payment of taxes and did not designate a particular tax that had fallen due and should be paid. A general order, such as that herein entered, cannot be the basis for a claim of entrapment. It is clear that the receiver did not rely on that order, but after the sale applied to the court for permission to pay over the sum in question to the Association. Moreover, it was the Association, not the receiver, which paid the taxes and against which judgment was asked and entered. There is no basis for extending to the Association the special protections which were afforded to a receiver, an officer of the court, under the circumstances present in the Reardon case, hereinbefore discussed.

The Association took the property subject to tax liens and has attempted to pay the taxes owing thereon with money which in law belongs to the petitioner. It argues that by the judgment appealed from, the petitioner has been unjustly enriched at its expense because the property is not worth the price bid for it. There is no evidence in the record to support this assertion and even

210

if true, we could not make this unique departure from the law and say in substance that while the purchaser has bid $54,069.39, the property is worth less and hence the court will direct that the difference be made up out of funds in the hands of the receiver. It might be fireside equity, but not law. If there is any windfall to the petitioner, it cannot be attributed to any improper act on his part.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.