No. 2--05--1255                                    filed: 11/13/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MIDWEST BANK AND TRUST COMPANY, Successor by Merger to Midwest Bank of McHenry County, | ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03--CH--811 |
| US BANK, f/k/a Firstar Bank, f/k/a First National Bank of Geneva, as Trustee under the provisions of a Trust Agreement dated September 3, 1985, and known as Trust No. 2312; THE UNITED STATES OF AMERICA; BARBARA STRANDELL; WEISZ, MICHLING AND HOFFMAN, P.C.; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Harold Strandell, Defendant-Appellant; Cardunal Investment Group, Inc., and Patina, Ltd., Third-Party Purchasers-Appellees). | ) ) ) | Honorable Michael T. Caldwell, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

At issue in this case is whether the trial court abused its discretion by distributing surplus funds from the sale of foreclosed property to third-party purchasers-appellees Cardunal Investment Group, Inc., and Patina, Ltd. (collectively Cardunal), for the payment of real estate taxes. We conclude that the trial court abused its discretion by doing so, and therefore, we reverse and remand.

I.  BACKGROUND

Plaintiff, Midwest Bank and Trust Company (Midwest), held a first priority mortgage interest in commercial property located at 2025 East Algonquin Road in Algonquin.  The property was also encumbered by a second mortgage lien from the United States of America Small Business Administration (SBA) and a judgment in favor of Weisz, Michling & Hoffman, P.C.  A land trust held title to the property, and defendant-appellant, Harold Strandell (Strandell), was one of the trust's beneficial owners.

On November 7, 2003, Midwest filed a foreclosure action.  The trial court entered a judgment of foreclosure and sale in favor of Midwest on July 23, 2004.  The same day,  it also entered a supplemental judgment of foreclosure and sale in favor of the SBA.[1]  On October 21, 2004, Midwest filed a "Notice of Sheriff's Sale."  The notice contains the following provision:  "The property and title will be conveyed 'AS IS' subject to prior mortgages of record, all general real estate taxes which are a lien upon the real estate, special assessments, if any, and easements and restrictions of record." (Emphasis added.)  Midwest filed an "Amended Notice of Sheriff's Sale" on October 28, 2005, which also contained this provision.

The sheriff of McHenry County conducted the judicial sale on November 10, 2005.  Cardunal won the auction, with a bid of $1,030,000.  On November 14, 2005, Midwest moved to confirm the sale pursuant to section 15--508 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15--1508 (West 2004)).  Attached to Midwest's motion is an unsigned "Sheriff's Report of Sale and Distribution" (Report).  The Report indicates that the bid was $1,030,000, that Midwest was to receive $561,888.55 from the sale's proceeds, and that the sheriff would retain $600 for the costs

---

[1]Weisz, Michling & Hoffman, P.C., never entered an appearance in the action.

of the sale. Under the heading "Costs advanced during redemption" and the subheadings "Real Estates Taxes," "Hazard Insurance Premium," and "Property Inspection/Other," the Report shows zeros. It lists the surplus as $468,111.50.[2]

On November 18, 2005, a signed Report was filed, with almost identical content. However, this Report correctly lists the surplus as $467,511.45. The same day, the trial court entered an order confirming the sale. It also entered an order, pursuant to a petition by the SBA, modifying the Report to provide a distribution of $298,652.12 to the SBA.

Also on November 18, 2005, Cardunal filed a motion for a partial turnover of the surplus funds, for property taxes. Cardunal argued that such taxes were the responsibility of the party in possession of the premises as of January 1 of any year in which the property is to be assessed, and Cardunal alleged that "Defendant" (presumably Strandell) was the property owner on January 1, 2003, January 1, 2004, and January 1 through November 19, 2005. It requested $32,264.20 for 2003 real estate taxes, $34,078.52 for 2004 real estate taxes, and $30,155.28 for prorated 2005 real estate taxes, for a total of $96,498.

The trial court granted the motion the same day it was filed. It ruled that "Real Estate Taxes are a cost of sale and the net proceeds after payment of the Plaintiff[']s claim and the second Mortgage is $169,459.33,"[3] and it awarded Cardunal $96,498 of the surplus. However, it stayed the

---

[2]The report appears to contain a mathematical error, as $1,030,000 - $561,888.55 - $600 = $467,511,45.

[3]This calculation appears to have adopted the initial incorrect calculation of the surplus, as $468,111.50 - $298,652.12 = $169,459.38 (though the order lists the surplus as $169,459.33). In contrast, $467,511.45 - $298,652.12 = $168,859.33.

turnover of this sum for 30 days.[4] Strandell timely appealed. According to the record, following the filing of the appeal, Strandell petitioned the trial court on December 27, 2005, for the turnover of surplus funds. On December 28, 2005, the trial court ordered that the sheriff of McHenry County turn over $96,498, plus any interest, to Cardunal and $72,961.33,[5] plus any interest, to Strandell.

On appeal, Strandell argues that the trial court erred by distributing surplus funds to Cardunal for real estate taxes. He argues that Cardunal had either actual or constructive notice of any preexisting tax liens on the property. He additionally argues that the trial court should not have awarded the funds because Cardunal did not offer any evidence, documentary or otherwise, showing the existence of any tax liens on the property. Absent an abuse of discretion, we will not disturb a trial court's distribution of the surplus from a judicial foreclosure sale. Members Equity Credit Union v. Duefel, 295 Ill. App. 3d 336, 337 (1998).

Cardunal maintains that at the hearing on its motion, neither Strandell nor any of the other parties to the foreclosure action challenged its right to bring the motion. We agree that Cardunal was permitted to request a portion of the surplus funds under section 15--1501(e)(3) of the Foreclosure Law, which states:

"After the sale of the mortgaged real estate in accordance with a judgment of foreclosure and prior to the entry of an order confirming the sale, a person who has or claims an interest in the mortgaged real estate, may appear and become a party, on such terms as the court may deem just, for the sole purpose of claiming an interest in the proceeds of sale. Any such

---

[4]According to Strandell, the stay was entered in case a contrary order was issued in his bankruptcy proceeding.

[5]Apparently the trial court subtracted $96,498 from $169,459.33 to obtain $72,961.33.

party shall be deemed a party from the commencement of the foreclosure, and the interest of such party in the real estate shall be subject to all orders and judgments entered in the foreclosure." 735 ILCS 5/15--1501(e)(3) (West 2004).

Cardunal contends that no party requested additional time to respond to the motion or disputed the amount of unpaid property taxes. Cardunal appears to be arguing that Strandell waived his right to challenge Cardunal's receipt of surplus funds by not objecting to the request in the trial court. According to Strandell, however, he orally objected to turning over such funds. As no report of proceedings has been filed in this case, we decline to find that the issue has been waived.

Cardunal further argues that its receipt of surplus funds was justified under section 15--1512 of the Foreclosure Law (735 ILCS 5/15--1512 (West 2004)), which sets forth the distribution of the proceeds from a foreclosure sale. That section states:

"The proceeds resulting from a sale of real estate under this Article shall be applied in the following order:

(a) the reasonable expenses of sale;

(b) <u>the reasonable expenses of securing possession before sale, holding, maintaining, and preparing the real estate for sale, including payment of taxes and other governmental charges</u>, premiums on hazard and liability insurance, receiver's and management fees, and, to the extent provided for in the mortgage or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to Section 15--1505 and other legal expenses incurred by the mortgagee;

(c) if the sale was pursuant to judicial foreclosure, satisfaction of claims in the order of priority adjudicated in the judgment of foreclosure or order confirming the sale; and

(d) remittance of any surplus to be held by the person appointed by the court to conduct the sale until further order of the court. If there is a surplus, such person conducting the sale shall send written notice to all parties to the proceeding advising them of the amount of the surplus, and that the surplus shall be held until a party obtains a court order for its distribution or until, in the absence of an order, the surplus is forfeited to the State."

(Emphasis added.) 735 ILCS 5/15--1512 (West 2004).

Both judgments of foreclosure and sale entered by the trial court mirror, in large part, the statute's language as to the distribution of the sale's proceeds.

According to Cardunal, section 15--1512(b) anticipates and provides for the payment of real estate taxes as a cost of sale, and thus the issue of whether real estate taxes should be paid from the surplus was properly before the court. While we agree that the trial court had jurisdiction to rule on Cardunal's request for real estate taxes, section 15--1512(b) does not support Cardunal's position. The statute states that proceeds shall be paid for the "reasonable expenses incurred of securing possession before sale" and "holding, maintaining, and preparing the real estate for sale, including payment of taxes." 735 ILCS 5/15--1512(a), (b) (West 2004). Thus, the statute contemplates reimbursement for taxes paid on the property before the foreclosure sale, presumably by the mortgagee. Here, in contrast, Cardunal sought funds to pay real estate taxes after it purchased the property.

Cardunal additionally argues that Strandell constructively acted as the receiver for the property, because the trial court did not appoint an independent receiver and Strandell remained in possession of the property during the foreclosure action. According to Cardunal, section 15--1704(b)(5) of the Foreclosure Law (735 ILCS 5/15--1704(b)(5) (West 2004)) mandates that a

receiver pay real estate taxes. We note that rather than requiring a receiver to pay taxes, section 15--1704(b) actually states that "a receiver shall have the power and authority to" pay taxes. 735 ILCS 5/15--1704(b)(5) (West 2004). Also, the decision of whether to appoint a receiver is within the trial court's discretion (De Kalb Bank v. Purdy, 166 Ill. App. 3d 709, 716 (1988)), and Cardunal cites no authority for the proposition that absent such an appointment, the landowner is required to act as a receiver. Thus, this argument lacks merit.

Strandell cites Members Equity Credit Union, 295 Ill. App. 3d 336. As that case is highly relevant, we examine it in detail. There, Members Equity Credit Union foreclosed on the junior mortgage it held on residential property owned by the Duefels. The property was also subject to a first mortgage, but that mortgage was not identified in the complaint or judgment of foreclosure. The judgment of foreclosure stated that any surplus would be remitted " 'to the mortgagor or as otherwise directed by the court.' " Members Equity Credit Union, 295 Ill. App. 3d at 337. The successful purchaser bid $58,000. After the proceeds from the judicial sale were applied to pay the junior mortgage and court costs, a surplus of $21,396.82 remained. The purchaser moved to have the surplus distributed to him to pay the first mortgage. According to an exhibit attached to his motion, the first mortgage had a balance of about $28,000. The trial court granted the motion, and the Duefels appealed. Members Equity Credit Union, 295 Ill. App. 3d at 337.

On appeal, the Duefels argued that the trial court should not have allowed the successful bidder to recoup his own funds for the purpose of paying a superior lien that remained on the property. They pointed out that the bidder had either actual or constructive notice of the prior lien when he purchased the property. The Duefels also argued that because the first mortgage was not

adjudicated in the action, the trial court lacked the authority to order that the surplus funds be applied to its repayment. Members Equity Credit Union, 295 Ill. App. 3d at 338.

The appellate court stated that, under Illinois law, a buyer at a judicial foreclosure sale takes the property subject to any outstanding debts that may encumber the property after the sale. Therefore, the court reasoned that the bidder had purchased the property subject to the outstanding first mortgage. The court further stated that a foreclosure sale must proceed on the assumption that bidding will be competitive, and competitive bidding promotes the public policy goal of maximizing the selling price, which decreases the chance that there will be insufficient proceeds to pay the judgment creditors or that the mortgagors will face a deficiency judgment. According to the court, the trial court's decision substantially undermined that goal. Members Equity Credit Union, 295 Ill. App. 3d at 339.

The appellate court also noted that the bidder presumably offered an amount that he believed the property was worth despite the existence of the first mortgage. The court stated that the trial court's order rendered the competitive bidding process practically meaningless because the bidder would have, in effect, bought the property for the amount of the foreclosed mortgage plus costs regardless of the actual amount of his bid. The appellate court stated that under the trial court's decision, "a bidder would have every incentive to bid an excessive amount at a judicial sale because he, as the highest bidder, would be able to petition the court to recoup the surplus." Members Equity Credit Union, 295 Ill. App. 3d at 339.

In response to the bidder's argument that the Duefels directly benefitted from the trial court's ruling because, based on a promissory note secured by the first mortgage, they remained liable for the full amount of that mortgage, the appellate court stated that the first mortgagee's interest was not

affected by the foreclosure proceedings because it was not a party to the action and because it held a superior lien on the property. The court reasoned that following the judicial sale the first mortgagee could still take action to protect its interest if the loan was in default, by either bringing a collection proceeding against the Duefels or foreclosing on the real estate. Members Equity Credit Union, 295 Ill. App. 3d at 340. The appellate court concluded that the trial court abused its discretion by ordering that the surplus funds be applied to the payment of the property's first mortgage and that the money should have gone to the Duefels. Members Equity Credit Union, 295 Ill. App. 3d at 341.

The reasoning of the Members Equity Credit Union court is applicable to the instant case. A purchaser at a judicial foreclosure sale takes the property subject to any outstanding liens on the property. Members Equity Credit Union, 295 Ill. App. 3d at 339. This is all the more true here, as even the "Notice of Sheriff's Sale" filed by Midwest stated that the "property and title will be conveyed 'AS IS' subject to prior mortgages of record, all general real estate taxes which are a lien upon the real estate, special assessments, if any, and easements and restrictions of record." (Emphasis added.) Thus, Cardunal clearly was responsible for any unpaid real estate taxes on the property. By awarding Cardunal a portion of the surplus to pay these taxes, the trial court interfered with the competitive bidding process, as other bidders may have taken the unpaid taxes into account when submitting their bids, and it thereby unjustly enriched Cardunal at Standell's expense. As such, the trial court abused its discretion by awarding Cardunal part of the surplus.

III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the McHenry County circuit court and remand the cause for further proceedings.

Reversed and remanded.

O'MALLEY and CALLUM, JJ., concur.