# Illinois Official Reports

## Appellate Court

*Bank of America, N.A. v. Higgin*, 2014 IL App (2d) 131302

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., Plaintiff-Appellee, v. GLEN HIGGIN, d/b/a Birdies and Eagles, and KAREN HIGGIN, d/b/a Birdies and Eagles, Defendants-Appellants (JPMorgan Chase Bank, N.A., as Successor in Interest to Bank One, N.A., Successor in Interest to American National Bank and Trust Company of Chicago, Nonrecord Claimants, and Unknown Owners, Defendants). |
| District & No. | Second District<br>Docket No. 2-13-1302 |
| Filed | September 26, 2014 |
| Rehearing denied | November 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In mortgage foreclosure proceedings, the order confirming the judicial sale was modified by the appellate court to grant defendant mortgagors the sale surplus, even though the trial court initially awarded the surplus to the mortgagee bank after the bank informed the trial court that the bank paid the taxes due on the property at the time of the sale after the sale and requested the trial court to use the surplus to reimburse the bank for that payment, since the bank was only allowed to recover expenditures necessary to preserve its interests up until the time of the sale, and courts should not use a surplus to pay real estate taxes after the foreclosure sale in order to protect the mortgagee's interests, especially when real estate taxes do not constitute costs and fees, which may be allowed to the extent provided in the note and mortgage. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-CH-983; the Hon. Leonard J. Wojtecki, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Scott G. Richmond and Peter J. Evans, both of Ariano Hardy Ritt Nyuli Richmond Lytle & Goettel, of South Elgin, for appellants. |
| | Thomas H. Peckham and Brian R. Orr, both of Lowis & Gellen LLP, of Chicago, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    The property-owner defendants in a foreclosure action, Glenn Higgin, d/b/a Birdies and Eagles, and Karen Higgin, d/b/a Birdies and Eagles (defendants), appeal, challenging the order confirming the sale and ordering the distribution of the sale surplus to plaintiff, Bank of America, N.A., the mortgagee. Real estate taxes were due on the foreclosed property at the time of sale, plaintiff paid them afterward, and then plaintiff asked the court to apply the surplus from its own bid to reimburse it for that payment. Defendants asserted at the time and now reassert on appeal that such reimbursement is contrary to Illinois foreclosure law. We agree with defendants. We therefore modify the confirmation order to grant the sale surplus to defendants.

¶ 2                                    I. BACKGROUND

¶ 3    On March 19, 2012, plaintiff filed a two-count complaint against defendants, lienor JPMorgan Chase Bank, N.A. (the successor in interest to Bank One, N.A., which was the successor in interest to American National Bank & Trust Co. of Chicago), nonrecord claimants, and unknown owners. The first count sought a money judgment against defendants based on breach of a group of related loan agreements. The second sought foreclosure on the mortgaged property at 1800 West McDonald Road in South Elgin.

¶ 4    The mortgage instrument attached to the complaint stated that real estate tax payments made by the mortgagee would become due under the note.

¶ 5    Defendants answered and plaintiff moved for summary judgment. On January 23, 2013, the court entered a judgment of foreclosure. The judgment provided that, "[i]f Plaintiff is the successful bidder at the sale, the amount due Plaintiff, plus all costs, advances, and fees, with interest incurred between entry of Judgment and confirmation of sale, shall be taken as credit in its bid." Further, the confirmation order "may also" "[a]pprove the Plaintiff's fees, costs and additional advances arising between entry of the Judgment of Foreclosure and the

- 2 -

Confirmation hearing, pursuant to the terms of the mortgage and [section 15-1504 of the Code of Civil Procedure (Code) (735 ILCS 5/15-1504 (West 2012))]." The published notice of sale stated that the property was "subject to real estate taxes."

¶ 6    Plaintiff moved for confirmation of the sale. The motion stated that plaintiff had been the successful bidder, having bid $1,905,374.78, for a surplus of $83,305.25. Plaintiff asked the court to "appl[y] [the surplus to] the unpaid outstanding taxes due on the Property as it is a reasonable expense for [plaintiff] to secure possession of the property."

¶ 7    Plaintiff later filed an amended motion, in which it stated that it had intended to pay the taxes before the sale and therefore inadvertently had "included the amount of unpaid outstanding taxes *** as part of its credit bid." In support of its request to apply the surplus, it relied on a reference in the foreclosure judgment to section 15-1504(d) of the Code (735 ILCS 5/15-1504(d) (West 2012)). Most likely, plaintiff meant section 15-1504(d)(4), which states, concerning matters that are included in a judgment for fees and costs, "in order to protect the lien of the mortgage, it may become necessary for plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate." 735 ILCS 5/15-1504(d)(4) (West 2012).

¶ 8    Defendants moved for distribution of the surplus to them. They stated that plaintiff had been the only bidder at the sale. They argued that to allow plaintiff to pay the tax lien with the sale proceeds would make the sale contrary to the advertised terms. Further, by providing a rebate to plaintiff, it would produce a bidding process biased in favor of plaintiff. Finally, they argued that long-standing Illinois law is that a judicial sale purchaser takes a property subject to all outstanding liens–explicitly including real estate tax liens–and that to pay such liens out of the proceeds of a sale would be contrary to that rule.

¶ 9    Defendants also responded to plaintiff's amended motion for confirmation. They argued that plaintiff filed its motion "in an attempt to circumvent [the] Illinois Mortgage Foreclosure Statute [(735 ILCS 5/15-1512 (West 2012))]," which provides for the distribution of sale proceeds.

¶ 10    On November 6, 2013, plaintiff filed a "supplement" to its amended motion, in which it stated that it had redeemed the past-due taxes.

¶ 11    On November 14, 2013, the court confirmed the sale, ruling that the tax payment was "an advance made to protect the lien of the Plaintiff" and that it therefore became "an additional indebtedness." At the hearing, plaintiff argued that the foreclosure order allowed plaintiff to have postsale "advances" rebated to it. It stated that this was "[p]ursuant to the terms of the mortgage and 735 ILCS 5/15-1504." It asserted that the bid indicated that it was "the minimum credit bid assuming the owner *** wants the Bank to pay the taxes current." Plaintiff said that this showed its "intent to pay [the taxes] all along." It stated that its bid was based on an evaluation of the property's worth that assumed that the taxes were paid:

"[T]he [law] *** bases its policy on the fact that the bidder presumably bids an amount that it believes the property is worth regardless of the liens and interest or taking those into account."

¶ 12    Plaintiff asked the court to focus on its "intent." It argued that the case law defendants had cited dealt with third-party purchasers and that such purchasers do not have the same right under the law to make advances to protect their interests. "[I]n order to protect its rights as the mortgagee[,] a bank has the right to make protective advances."

¶ 13    Defendants argued in response that section 15-1512(b) of the Code (735 ILCS 5/15-1512(b) (West 2012)), concerning distribution of the proceeds, states that the second priority after the expenses of the sale is "the reasonable expenses of securing possession before sale, *** including payment of taxes." They also represented that they had been working with a potential cash buyer and were prepared to provide evidence of that.

¶ 14    The court concluded that the case on which defendants had principally relied, *Midwest Bank & Trust Co. v. US Bank*, 368 Ill. App. 3d 721 (2006), was distinguishable because it involved a third-party purchaser. The court granted the surplus to plaintiff. (The amount of the taxes due exceeded the amount that was formerly the surplus, but plaintiff "stipulated" that it would not seek a deficiency judgment.) Defendants filed a timely notice of appeal.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, defendants argue that the distribution of any surplus is governed by sections 15-1512(a) and (b) of the Code:

> "The proceeds resulting from a sale of real estate under this Article shall be applied in the following order:
>
> (a) the reasonable expenses of sale; [and]
>
> (b) *the reasonable expenses of securing possession before sale*, holding, maintaining, and preparing the real estate for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, receiver's and management fees, and, to the extent provided for in the mortgage or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to Section 15-1505 and other legal expenses incurred by the mortgagee[.]" (Emphasis added.) 735 ILCS 5/15-1512(a), (b) (West 2012).

They argue that long-standing Illinois law requires that a judicial-sale purchaser take subject to existing liens and cannot have sale proceeds applied to clearing liens. Further, although the statutory foreclosure provisions do allow a mortgagee to recover real estate tax payments, that recovery is limited to presale payments. They assert that a well-established policy exists of encouraging competitive bidding with all bidders on a level playing field. Windfalls to mortgagors might result, but the law accepts such results; such occasional windfalls are not unjust enrichment given that a mortgagor does nothing to cause the surplus.

¶ 17    Plaintiff responds that the foreclosure judgment authorized the distribution that the court ordered. It points to the section that states that the confirmation order may "[a]pprove the Plaintiff's fees, costs and additional advances arising between entry of the Judgment of foreclosure and the Confirmation hearing pursuant to the terms of the mortgage and 735 ILCS 5/15-1504."

¶ 18    Plaintiff further asserts that defendants forfeited their right to challenge the content of the foreclosure judgment when they never specifically challenged the language of the judgment. In the alternative, it asserts that, because the sale complied with the foreclosure judgment and section 15-1508(b)(1) (735 ILCS 5/15-1508(b)(1) (West 2012)) (allowing approval of postsale fees and costs), the court acted within its discretion in approving the sale on plaintiff's terms. (Note that plaintiff here is asserting that the payment of taxes can be classified as a fee or cost.)

¶ 19 Both parties agree that the trial court's rulings on confirmation issues are reviewed for an abuse of discretion. See, *e.g.*, *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008).

¶ 20 Initially, we address plaintiff's claim that defendants forfeited the issue. We do not agree. A foreclosure judgment (at least one that, like this one, lacks a finding of immediate appealability under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010)) is an interlocutory order that therefore remains modifiable by the trial court until the final judgment, which is the confirmation of the sale. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶¶ 41-42, 44. No specific standard exists for the modification of an interlocutory order. For instance, a court can properly reverse a partial summary judgment when trial evidence shows that the grant of summary judgment was inconsistent with the evidence. *Berry v. Chade Fashions, Inc.*, 383 Ill. App. 3d 1005, 1010 (2008). No principle in Illinois law prevents a court from modifying an interlocutory order that requires future acts when, as matters progress, it becomes clear that performance of those acts will produce undesired results.

¶ 21 We do note that there are limits on the propriety of a court's vacating a foreclosure judgment after the filing of a motion for confirmation. Those limits, however, are not applicable to the circumstances here. In *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18, the supreme court noted that, although a judgment of foreclosure remains interlocutory until the court confirms the sale, any "party seeking to vacate a default judgment of foreclosure after the judicial sale of the mortgaged property necessarily must also [be] seek[ing] to set aside the judicial sale." It therefore ruled that any proper motion to vacate that is filed after the filing of a motion for confirmation of the sale must set out one of the bases for denial of confirmation listed in section 15-1508(b) of the Code (735 ILCS 5/15-1508(b) (West 2010)). *McCluskey*, 2013 IL 115469, ¶¶ 18, 25. Where a modification would not have the effect of setting aside the sale, that reasoning does not apply. *CitiMortgage, Inc. v. Sharlow*, 2014 IL App (3d) 130107, ¶ 15. Defendants here were not asking the court to set aside the sale, so the rule in *McCluskey* does not apply here.

¶ 22 We also note that, in a typical case, a postsale challenge to a foreclosure-judgment term might raise issues of fairness, as a party might have relied on that term in bidding. Here, however, plaintiff unequivocally stated that its bid was based on its misconception that it had already paid the taxes. Therefore, in making its bid, it did not rely on the language in the judgment that it now cites in support of its receipt of the surplus.

¶ 23 Turning to the merits of the matter, we agree with defendants that awarding the surplus to plaintiff was not in accord with foreclosure law. The circumstances here make clear that plaintiff made the tax payment not to preserve its mortgage-based interest, but to enhance its position as the buyer. That is not a permissible objective.

¶ 24 Illinois foreclosure law is replete with provisions that allow foreclosure plaintiffs to recover expenses incurred during foreclosure to protect their lien-based interests. These recoveries are distinguishable from payments that enhance the value of a property that the mortgagee has purchased as the buyer at the judicial sale.

¶ 25 Particularly relevant here is section 15-1505 of the Code:

"During a foreclosure, *and any time prior to sale*, a mortgagee or any other lienor may pay (i) when due installments of principal, interest or other obligations in accordance with the terms of any senior mortgage, (ii) when due installments of real estate taxes or (iii) any other obligation authorized by the mortgage instrument. With court approval, a mortgagee or any other lienor may pay any other amounts in connection with other

liens, encumbrances, or interests reasonably necessary to preserve the status of title." (Emphasis added.) 735 ILCS 5/15-1505 (West 2012).

Defendants are also correct to rely on section 15-1512(b) of the Code, which allows distribution of "the reasonable expenses of securing possession *before sale*." (Emphasis added.) 735 ILCS 5/15-1512(b) (West 2012).

¶ 26 The law also has multiple provisions facilitating contractual fee and cost recovery. Plaintiff points particularly to section 15-1508(b)(1) of the Code (735 ILCS 5/15-1508(b)(1) (West 2012)) (concerning additions to the judgment that the court can approve at confirmation). That section states:

"The confirmation order may also:

(1) approve the mortgagee's *fees and costs arising between the entry of the judgment of foreclosure and the confirmation hearing*, those costs and fees to be allowable to the same extent as provided in the note and mortgage and in Section 15-1504[.]" (Emphasis added.) 735 ILCS 5/15-1508(b)(1) (West 2012).

(The context for this is that section 15-1504(d) (735 ILCS 5/15-1504(d) (West 2012)) provides, "A statement in the complaint that plaintiff seeks the inclusion of attorneys' fees and of costs and expenses shall be deemed and construed to include [specific] allegations ***."). However, "fees and costs" do not include taxes. The subsequent provisions, describing the specific allegations, use the word "fees" to refer to attorney fees, stenographer's fees, and the like, but also filing fees. They use the word "costs" to refer to "costs of publication, costs of procuring and preparing documentary evidence and costs of procuring abstracts of title, Torrens certificates, foreclosure minutes and a title insurance policy." 735 ILCS 5/15-1504(d)(2) (West 2012). Concerning taxes, the assumed allegation is, "in order to protect the lien of the mortgage, it may become necessary for plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate." 735 ILCS 5/15-1504(d)(4) (West 2012).

¶ 27 In sum, under the mortgage foreclosure provisions, a plaintiff can recover "fees and costs" through the end of proceedings. This is consistent with terms in mortgages that allow the mortgagee to make the mortgagor bear the expenses of the suit. By contrast, the provisions for recovery of expenditures necessary to preserve the plaintiff's interests allow such recovery up until the time of sale only. That pattern is consistent with the recognition that, in ordinary circumstances, such payments after sale protect the buyer's interests, not the mortgagee's.

¶ 28 Defendants have cited a line of cases (*e.g.*, *Midwest Bank*) that holds that a purchaser at a foreclosure sale takes the property subject to any liens, including property-tax liens, and that courts therefore should not distribute sale surpluses to pay off such liens. Plaintiff asserts that this rule should not apply when the mortgagee is the buyer. In support of this, it relies heavily on section 15-1508(b)(1), which allows the confirmation order to approve the mortgagee's fees and costs arising between the entry of the judgment of foreclosure and the confirmation hearing, those costs and fees to be allowable to the same extent as provided in the note and mortgage and in section 15-1504. 735 ILCS 5/15-1508(b)(1) (West 2012). Plaintiff appears to assume that a payment of taxes can fall under the rubric of "fees and costs." Again, the problem for plaintiff is that taxes are not fees or costs. This is so under any standard legal usage. Further, as we have already shown, this is also so as "fees and costs" is used in section 15-1504. Furthermore, as we have just discussed, it goes against the standard purposes of the mortgage foreclosure provisions.

¶ 29 Plaintiff argues that the foreclosure judgment permitted the recovery of taxes paid postsale. It can point to two general phrases: (1) "[i]f Plaintiff is the successful bidder at the sale, the amount due Plaintiff, plus all costs, advances, and fees, with interest incurred between entry of Judgment and confirmation of sale, shall be taken as credit in its bid"; and (2) "[the confirmation order may a]pprove the Plaintiff's fees, costs and additional advances arising between entry of the Judgment of Foreclosure and the Confirmation hearing, pursuant to the terms of the mortgage and 735 ILCS 5/15-1504." Those statements are less specific than the mortgage foreclosure law and, to the extent that they permit recovery not permitted by the law, are not consistent with it. The broader recovery was thus an abuse of discretion.

¶ 30 The final issue is the remedy. Defendants argue that the court should have confirmed the sale on terms such that they received the surplus as they sought in their motion and as would have happened had plaintiff not filed its amended motion for confirmation. Receipt of the surplus would create something of a windfall for defendants. However, plaintiff does not argue for any alternative. It has not, for instance, argued for a remand so that it can seek to set aside the sale. Absent any proposal for an alternative remedy, defendants should receive the remedy they have sought.

¶ 31                                                     III. CONCLUSION

¶ 32 For the reasons stated, we affirm the order confirming the judicial sale, as modified to grant the surplus to defendants.

¶ 33 Affirmed as modified.